MLYNARSKI, by Guardian *ad litem,* and others, Plaintiffs
and Respondents, v. ST. RITA'S CONGREGATION OF
WEST ALLIS, Defendant: MARK F. PFALLER ASSO-
CIATES, INC., Defendant and Appellant.*

*April 14—May 10, 1966.*

* Motion for rehearing denied, with costs, on July 1, 1966.

For the appellant there was a brief by *Prosser, Zimmermann & Wiedabach* of Milwaukee, and oral argument by *Frederick H. Prosser*.

For the respondents there was a brief by *Teper & Weiss* of Milwaukee, and oral argument by *Daniel J. Weiss*.

WILKIE, J. Three questions are presented here:

(1) Is the defect in the window a structural defect in a public building?

(2) As a matter of law is the respondent barred from being a frequenter entitled to the special protection afforded by the safe-place statute?

(3) Does the complaint state a common-law cause of action against the architect?

*Structural Defect in Public Building.*

The first question is whether or not the window is part of either a public building or a place of employment. It is settled that due to the absence of profit motivations, a school is not a place of employment.[2] However, a school is a public building.[3] Appellant, relying on *Lawver v. Joint Dist.*[4] seeks to avoid the impact of this rule by arguing that respondent fell not in the school building proper, but in the schoolyard. In *Lawver*, where a student was killed when struck by a falling flagpole located on the school grounds, this court said:

"But in the instant case, the accident did not occur in the school building and the flagstaff or pole which broke and fell, causing the accident, had no physical connection with the building. Clearly, the school grounds and the sidewalk area cannot be considered a public building by any stretch of the imagination." [5]

However, *Lawver* is not controlling because the window, which allegedly caused respondent's injury, was not situated in the schoolyard; rather the window is a part of the school building itself. Had respondent been inside the building (in circumstances other than those making her a trespasser) and been injured by falling against an allegedly defective window, suit unquestionably could have been brought under the safe-place statute.

---

[2] *Niedfelt v. Joint School Dist.* (1964), 23 Wis. (2d) 641, 127 N. W. (2d) 800; *Kirchoff v. Janesville* (1949), 255 Wis. 202, 38 N. W. (2d) 698.

[3] *Niedfelt v. Joint School Dist., supra,* footnote 2; *Lawver v. Joint Dist.* (1939), 232 Wis. 608, 288 N. W. 192; *Heiden v. Milwaukee* (1937), 226 Wis. 92, 275 N. W. 922. It should be noted that these cases each involved a public school rather than one operated by a religious organization as in the present case. However, this fact should not operate to remove St. Rita's school from the "public building" category.

[4] *Supra,* footnote 3.

[5] *Lawver v. Joint Dist., supra,* footnote 3, at page 612.

*Frequenter.*

Two separate issues are presented on the crucial question of whether or not the respondent could be (on proof) a frequenter at the time of the accident.

(1) Can a student, whose injury is caused by a defect in the structure of a school building, and "who may go in or be in" the public building, be a "frequenter?"

(2) Can a student whose injury is caused by her falling from a railing on which she was walking in the school-yard, against a defective window of the school be a person "who may go or be in" a public building and thus a "frequenter" under the safe-place statute?

In 1923 in *Sullivan v. School Dist.*[6] this court held that a pupil attending a public school is not a frequenter of the school building within the meaning of the safe-place statute. This court has affirmed this holding in three later cases.[7] In the very recent case of *Niedfelt* this court, acknowledging that there may be doubt about the desirability of the interpretation, said "we prefer to leave any revision of the status of a schoolchild in this regard to the legislature." [8]

*Sullivan* was decided in 1923 and the principal consideration behind the court's ruling was recognition of the doctrine of governmental immunity from tort liability. The court said:

". . . we conclude that the legislature, in defining the term 'frequenter,' did not intend to abrogate the aforesaid doctrine of immunity, nor was it its intention to make the term 'frequenter' applicable to pupils receiving the benefit of a governmental function in a public school. In order to abrogate the common-law doctrine, the intention of the

---

[6] (1923), 179 Wis. 502, 191 N. W. 1020.

[7] *Niedfelt v. Joint School Dist., supra,* footnote 2; *Kirchoff v. Janesville, supra,* footnote 2; *Heiden v. Milwaukee, supra,* footnote 3.

[8] *Niedfelt v. Joint School Dist., supra,* footnote 2, at page 646.

legislature must be clearly expressed either in specific language or in such a manner as to leave no reasonable doubt of its object." [9]

Now that the doctrine of governmental immunity from tort liability has been abrogated,[10] the foundation underlying *Sullivan* has been taken away and the *Sullivan* rule should be changed. If parents and others who are temporarily on the premises under circumstances which do not make them trespassers are frequenters entitled to the protection afforded by the safe-place statute it defies logic and common sense why students attending classes in that building should not be entitled to that same protection. There has been no case extending the ruling of *Sullivan* to a situation like the one alleged here where a student is injured while not under instruction or supervision. In *Anderson v. Joint School Dist.*[11] our court allowed a student to recover under the safe-place statute where she was injured by a defect in the building at a time when she was on the premises after school hours and while attending a school dance.[12] We refuse to extend *Sullivan* to the present situation. We would even overrule *Sullivan* itself if such would bring the respondent under the protection of the safe-place law. But even if *Sullivan* were overruled this would not bring the respondent under the safe-place statute because in our opinion she could not be found to be a "frequenter" under sec. 101.01 (5), Stats., which defines the term to "mean and include every person, other than an employe, who may go in or be in a place of employment or public building under circumstances which render him other than a trespasser."

---

[9] *Sullivan v. School Dist.*, *supra*, footnote 6, at page 507.

[10] *Holytz v. Milwaukee* (1962), 17 Wis. (2d) 26, 115 N. W. (2d) 618.

[11] (1964), 24 Wis. (2d) 580, 129 N. W. (2d) 545, 130 N. W. (2d) 105.

[12] The court declined to pass on the frequenter question because it was not raised.

The point is that a frequenter is one who may go in or be in a public building. The duty owed under the safe-place law to keep a public building as reasonably safe as the nature of the premises will permit is to frequenters and employees.[13] The basic concept is that a higher standard of care is imposed on owners of public buildings to provide safeguards to protect persons that are in the building or who are in the process of going in or out under circumstances which do not render them trespassers. The statute places no duty on the owner of the school building with respect to this little girl who was not either in the building or in the process of entering.

Thus, we are obliged to conclude that the respondent has no safe-place cause of action because she is not a frequenter. If she had fallen on the playground the cases are clear that there would be no safe-place cause of action because the playground is not a public building [14] and neither is it a place of employment.[15]

### Common-Law Action.

Although no cause of action was stated within the safe-place statute, the final question is whether the complaint nevertheless alleges a proper cause of action founded on common-law negligence. The complaint alleges that appellant "was negligent" and elaborates on a failure to comply with the safe-place statute. However, respects in which appellant could have been guilty of common-law negligence are not spelled out and appellant maintains that for this very reason a common-law cause of action was not stated. In *Lealiou v. Quatsoe* [16] the original com-

[13] *Delaney v. Supreme Investment Co.* (1947), 251 Wis. 374, 381, 382, 29 N. W. (2d) 754.

[14] *Lawver v. Joint Dist., supra,* footnote 3.

[15] See *supra,* footnote 2.

[16] (1961), 15 Wis. (2d) 128, 112 N. W. (2d) 193.

plaint alleged a safe-place violation and the plaintiff sought permission to file an amended complaint alleging common-law negligence in the alternative. The trial court denied the motion to amend, in part, because by that time the three-year statute of limitations had run. This court held that it was error not to have allowed the amendment for the reason that:

"There was but one cause of action, that for negligence. It was alleged in terms of a violation of the safe-place statute but necessarily included common-law negligence. We have said that sec. 101.06, Stats., does not create a cause of action in favor of anyone but lays down a standard of care and if those to whom it applies violate the provisions of the statutes, they are guilty of negligence." [17]

Although respondent's complaint is obviously couched in safe-place terms, negligence is nonetheless alleged. In keeping with the rationale of *Lealiou* and the provisions and purpose of sec. 263.27, Stats., that pleadings should be liberally construed to promote "substantial justice between the parties," the complaint should be construed as setting forth a common-law cause of action in negligence. Hence the demurrer was properly overruled.

*By the Court.*—Order affirmed. Cause remanded for further proceedings not inconsistent with this opinion.

[17] Id. at page 136.